An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-994

Filed 5 November 2025

Office of Administrative Hearings, No. 24DHR001146

FLETCHER HOSPITAL, INC. d/b/a ADVENTHEALTH HENDERSONVILLE and ADVENTHEALTH ASHEVILLE, INC., Petitioners,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, HEALTH CARE PLANNING & CERTIFICATE OF NEED, Respondent,

and

MH MISSION HOSPITAL, LLLP, Respondent-Intervenor.

Appeal by petitioners-appellants from order entered 17 July 2024 by Administrative Law Judge David F. Sutton of the North Carolina Office of Administrative Hearings. Heard in the Court of Appeals 13 August 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Julie M. Faenza, Special Deputy Attorney General Derek L. Hunter, Assistant Attorney General Ashley C. Council, and Assistant Attorney General Farrah R. Raja, for respondent-appellee.*

*Wyrick Robbins Yates & Ponton LLP, by Charles George, Frank S. Kirschbaum, and Trevor P. Presler, for petitioners-appellants*

*Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., by Iain M. Stauffer and William F. Maddrey, for respondent-intervenor-appellee.*

FLOOD, Judge.

Petitioners-Appellants Fletcher Hospital, Inc. d/b/a AdventHealth Hendersonville ("AdventHealth Hendersonville") and AdventHealth Asheville, Inc. (collectively, "Petitioners") appeal from Administrative Law Judge David F. Sutton's ("ALJ Sutton") decision granting summary judgment against them, and in favor of Respondent-Appellee North Carolina Department of Health and Human Services, Division of Health Service Regulation, Healthcare Planning and Certificate of Need Section (the "Agency") and Respondent-Intervenor-Appellee MH Mission Hospital, LLP ("Mission") (collectively, "Respondents"). On appeal, Petitioners argue ALJ Sutton erroneously granted summary judgment in favor of Respondents, as Petitioners satisfied their burden of demonstrating the Agency committed error in approving Mission's Certificate of Need ("CON") application to develop a freestanding emergency department ("FSED") in Buncombe County, North Carolina, and the Agency's approval substantially prejudiced Petitioners' rights. Upon review, we conclude Petitioners have presented no specific evidence in support of a claim of substantial prejudice, which is necessary for proper reversal of the Agency's decision. As such, Respondents successfully demonstrated there is no genuine issue as to any material fact and they are entitled to a judgment as a matter of law; we therefore affirm ALJ Sutton's decision awarding summary judgment in favor of Respondents.

## I. **Factual and Procedural Background**

In 2022, Mission filed applications for the construction of two FSEDs—one in

Arden, North Carolina (the "Arden FSED"), and the other in the unincorporated community of Candler, North Carolina (the "Candler FSED")—and each application was conditionally approved by the Agency pursuant to separate Agency findings dated 24 May 2022. On or about 17 April 2023, Mission submitted a CON application (the "Mission Application") to the Agency, requesting a CON for the Candler FSED, and on 1 May 2023, the Agency began its review of the Mission Application.[1]

On 31 May 2023, Petitioners—who operate existing hospitals in the counties of Henderson and Buncombe, North Carolina—submitted written comments to the Agency in accordance with N.C.G.S. § 131E-185(a1)(1), opposing the Mission Application and asserting that, *inter alia*, approval of the Mission Application would create unnecessary duplication of existing or approved services by AdventHealth Hendersonville.[2] Petitioners also presented to the Agency a 25 July 2022 letter written by then Attorney General Josh Stein, which alleged, in relevant part, that "Mission effectively operated as a legislatively authorized monopoly[.]" On 19 June 2023, Mission filed comments in response to those of Petitioners, and that same day, the Agency held a public hearing for members of the public to present oral comments in support of or in opposition to the Mission Application. On 25 September 2023, the

---

[1] As the total capital expenditure of Mission's proposed FSED project exceeded the statutory threshold of $4,000,000, the project qualified as a "new institutional health service" under N.C.G.S. § 131E-176(16)(b), thus requiring a CON from the Agency.

[2] While AdventHealth Hendersonville is located in Henderson County, North Carolina, and the Candler FSED would be located in Buncombe County, AdventHealth Hendersonville serves a substantial number of emergency department patients who reside in Buncombe County.

Agency issued its written Required State Agency Findings, wherein the Agency decided that—upon its consideration of the Mission Application, exhibits to the Mission Application, public information, written comments, responses to the comments, and remarks made at the 19 June 2023 public hearing—the Mission Application was to be conditionally approved (the "Agency Decision").

On 25 October 2023, Petitioners filed a Petition for Contested Case Hearing with the North Carolina Office of Administrative Hearings ("OAH"), appealing from the Agency Decision. On 27 March 2024, upon consideration of "the parties' schedules and the scope of the dispute," Petitioners voluntarily dismissed without prejudice their 25 October 2023 petition, and that same day, refiled their Petition for Contested Case Hearing (the "Petition"). In the Petition, Petitioners alleged that the Agency erred in its review of the Mission Application, and the Agency Decision substantially prejudiced Petitioners' rights. On 27 June 2024, Respondents filed a Motion for Summary Judgment (the "Motion") "on the grounds that there remains no issue of material fact that Petitioners have failed to demonstrate that they are substantially prejudiced by the" Agency Decision.[3]

On 5 July 2024, Petitioners filed their response to the Motion, wherein Petitioners argued a claim of substantial prejudice. In support of this claim, Petitioners included with their response, in relevant part, a "harm exhibit"—

---

[3] Mission filed the Motion and a brief in support of the Motion on 27 June 2024, and that same day, the Agency filed a notice of "adoption and support of the Motion[.]"

identified as Deposition Exhibit 84—which presents the revenue and number of patients AdventHealth Hendersonville is projected to lose upon construction of the Candler FSED. Per the calculations delineated in the harm exhibit, AdventHealth Hendersonville would lose all patients in every relevant zip code but one to the Candler FSED, and lose between $4.7 and $8.6 million in gross revenue.

In addition to the harm exhibit, Petitioners included with their response transcripts of Rule 30(b)(6) deposition testimonies from Petitioners' expert witness, Karin Sandlin—who was proffered and accepted as an expert in the field of healthcare planning and the preparation and analysis of CON applications—and Petitioners' CEO, Brandon Nudd. During her deposition, Sandlin testified that: the harm exhibit supports Petitioners' claim of substantial prejudice because it illustrates the number of patients AdventHealth Hendersonville will lose, as well as their forecasted, resulting loss in gross revenue, if the Candler FSED is built; and the "reduction in the profitability of [Petitioners'] hospital's operations . . . will limit or potentially eliminate the financial resources for subsidizing community-based services." Sandlin also admitted, however, that while "the CON statute is designed to protect the public and healthcare providers from unnecessary duplication. . . . [and] the most marginalized citizens in the community[,]" the statute does not afford "provider[s] of any type of service . . . an entitlement to maintain specific market share or to serve specific patients[.]" Finally, upon cross-examination regarding the potential discontinuation or reduction of Petitioners' services resulting from the opening of the

Candler FSED, Nudd testified that he is not aware of any analysis that has been conducted to quantify such an impact on Petitioners' services.

On 10 July 2024, ALJ Sutton heard oral arguments on the Motion. On 17 July 2024, ALJ Sutton entered his decision, granting summary judgment in favor of Respondents upon consideration of the "Motion, the Brief in Support of [the] Motion and the exhibits included therewith, [the Agency's] Notice, [Petitioners'] Response and attached exhibits, the pleadings of record, all other evidence of record, and argument of the Parties' counsel[.]" Petitioners timely appealed.

## II. **Jurisdiction**

Petitioners' appeal is properly before this Court as an appeal from the final decision of an administrative law judge pursuant to N.C.G.S. §§ 7A-29(a) and 131E-188(b) (2023).

## III. **Standard of Review**

Pursuant to North Carolina statute:

> The court reviewing a[n agency's] final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>
> (3) made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence under [N.C.]G.S. [§§] 150B-29(a), 150B-30, or 150B-31 [(2023)] in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C.G.S. § 150B-51(b) (2023). "The first four grounds for reversing or modifying an agency's decision are . . . law-based inquires that we review de novo[,]" *CaroMont Health, Inc. v. N.C. Dep't of Health & Hum. Servs.*, 231 N.C. App. 1, 4 (2013) (citation and internal quotation marks omitted), wherein this Court "considers the matter anew and freely substitutes its own judgment for that of the trial court[,]" *McMillan v. Ryan Jackson Props., LLC*, 232 N.C. App. 35, 39 (2014) (citation and internal quotation marks omitted). Here, Petitioners contend that ALJ Sutton's decision was in excess of statutory authority, made upon unlawful procedure, and affected by other error of law, and as such, we review de novo ALJ Sutton's granting of summary judgment in favor of Respondents. *See CaroMont Health, Inc.*, 231 N.C. App. at 4; *see also Blue Ridge Healthcare Hosps. Inc. v. N.C. Dep't of Health & Hum. Servs.*, 255 N.C. App. 451, 456 (2017) ("We review the ALJ's order granting or denying summary judgment *de novo*." (citation omitted) (cleaned up)).

"Just as in other contested cases, an ALJ may enter summary judgment in a case challenging a CON decision." *Fletcher Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 293 N.C. App. 41, 44 (2024) (citation omitted) (cleaned up) (hereinafter, "*Fletcher I*"). Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Id.* at 44 (citation omitted).

> The burden is on the moving party to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet its burden, the movant is required to present a forecast of the evidence available at trial that shows there is not material issue of fact concerning an essential element of the non-movant's claim and that the element could not be proved by the non-movant through the presentation of further evidence.

*Bio-Medical Applications of N.C. Inc. v. N.C. Dep't of Health & Hum. Servs.*, 282 N.C. App. 413, 415 (2022) (citation omitted).

## IV. <u>Analysis</u>

Petitioners argue on appeal that ALJ Sutton erroneously granted summary judgment in favor of Respondents, as Petitioners satisfied their burden of demonstrating the Agency approval of the Mission Application was in error, and the Agency's approval substantially prejudiced Petitioners' rights. We disagree, and as explained in further detail below, need only address Petitioners' argument regarding substantial prejudice.

"After a decision of the [Agency] to issue . . . a [CON][,] . . . *any affected person* . . . shall be entitled to a contested case hearing[.]" *Parkway Urology, P.A. v. N.C. Dep't of Health & Hum. Servs.*, 205 N.C. App. 529, 535 (2010) (citation omitted) (emphasis original). An "affected person" is defined as, in relevant part, "any person

who provides services, similar to the services under review, to individuals residing within the service area or geographic area proposed to be served by the applicant." *Surgical Care Affiliates, LLC v. Dep't of Health & Hum. Servs.*, 235 N.C. App. 620, 623 (2014) (quoting N.C.G.S. § 131E-188(c) (2023)). "In addition to meeting this perquisite to filing a petition for a contested case hearing regarding CONs, the petitioner must also satisfy the actual framework for *deciding* the contested case[.]" *Id.* at 623 (citation modified) (emphasis original).

To make a colorable claim against the Agency's decision to approve a CON application, a petitioner must state in its petition,

> facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise *substantially prejudiced* petitioner's rights *and* that the agency . . . :
>
> (1) Exceeded its authority or jurisdiction[;]
>
> (2) Acted erroneously[;]
>
> (3) Failed to use proper procedure[;]
>
> (4) Acted arbitrarily or capriciously[; or]
>
> (5) Failed to act as required by law or rule.

N.C.G.S. § 150B-23(a) (2023) (emphasis added). This Court has interpreted the above-delineated standard "to mean that the ALJ in a contested case hearing must determine whether the petitioner has met its burden in showing that the agency substantially prejudiced the petitioner's rights." *Surgical Care Affiliates, LLC*, 235

N.C. App. at 624 (citation and internal quotation marks omitted) (cleaned up). Even where a petitioner satisfies its burden of proof by showing Agency error, the petitioner "must also separately establish that it was substantially prejudiced by the Agency's error; it may not rest its case upon a bare allegation that it was prejudiced by Agency error alone." *Fletcher I*, 293 N.C. App. at 50.

> In order to establish substantial prejudice, the petitioner must provide specific evidence of harm resulting from the award of the CON that went *beyond* any harm that *necessarily resulted from additional competition*. The harm required to establish substantial prejudice cannot be conjectural or hypothetical and instead must be concrete, particularized, and actual or imminent.

*Id.* at 50 (quoting *Bio-Medical Applications of N.C. Inc*, 282 N.C. App. at 417) (emphasis added).

As to what may constitute a harm that went beyond any harm that necessarily resulted from additional competition, in *Blue Ridge Healthcare Hospitals Inc.*, this Court considered whether—assuming the Agency erred in its application of the statutory criteria in approving the respondent's CON application—the petitioner met his burden of showing substantial prejudice. 255 N.C. App. at 464. The petitioner argued it suffered substantial prejudice because "it would lose patients and profits due to the [Agency's] approval of the" respondent's CON application, and "its other services . . . would be compromised by los[s of] profits[.]" *Id.* at 464. This Court disagreed, and provided that adoption of the petitioner-appellant's argument "would have us treat any increase in competition resulting from the award of a CON as

inherently and substantially prejudicial to any pre-existing competing health service provider in the same geographic area. This argument would eviscerate the substantial prejudice requirement contained in N.C.[G.S.] § 150B-23(a)." *Id.* at 464 (quoting *Parkway Urology*, 205 N.C. App. at 539).

Moreover, this Court rejected the *Blue Ridge Healthcare Hospitals Inc.* petitioner's additional argument that substantial prejudice can be categorically demonstrated by presenting "specific evidence of financial harm resulting from the award of a CON[.]" 255 N.C. App. at 465. Where the petitioner's specific evidence of harm demonstrates the "harm arose solely out of the fact that competition would be increased by virtue of the authorization of . . . additional" medical facilities, then the petitioner "has asserted harm from normal competition, which does not constitute a showing of substantial prejudice from the Agency's allowance of the CON." *Id.* at 465 (citation omitted); *see also CaroMont Health, Inc.*, 231 N.C. App. at 10 (providing that although the petitioner "presented evidence of specific harm, the harm resulted solely from the CON's introduction of additional competition"); *cf. Hospice at Greensboro, Inc. v. N.C. Dep't of Health & Hum. Servs.*, 185 N.C. App. 1, 17 (2007) (holding that the issuance of a "No Review" letter, "which result[s] in the establishment of a 'new institutional health service' in [the petitioner's] service area without a prior determination of need[,]" constitutes substantial prejudice "as a matter of law").

Here, Petitioners presented in support of their substantial prejudice claim the following specific evidence: the harm exhibit, delineating the gross revenue and

number of patients AdventHealth Hendersonville is projected to lose upon construction of the Candler FSED; Sandlin's testimony that the harm exhibit supports Petitioners' claim of substantial prejudice because it illustrates the number of patients AdventHealth Hendersonville will lose, as well as their alleged resulting loss in gross revenue, if the Candler FSED is built; and Sandlin's testimony that the "reduction in the profitability of [Petitioners'] hospital's operations . . . will limit or potentially eliminate the financial resources for subsidizing community-based services." While this evidence is specific evidence of harm resulting from the Agency's approval of the Mission Application, as required for a showing of substantial prejudice, it cannot be said this evidence demonstrates harm beyond that which necessarily results from additional competition. *See Fletcher I*, 293 N.C. App. at 50.

As an initial matter, Petitioners' specific evidence of harm resulting from the Agency's approval of the Mission Application does not, categorically, satisfy Petitioners' evidentiary burden. A showing of harm from the mere authorization of additional medical facilities serves to demonstrate "harm from normal competition, which does not constitute a showing of substantial prejudice from the Agency's allowance of [a] CON." *See Blue Ridge Healthcare Hosps. Inc.*, 255 N.C. App. at 465. Further, as admitted by Sandlin, North Carolina law does not afford "provider[s] of any type of service . . . an entitlement to maintain specific market share or to serve specific patients[.]"

Next, regarding the harm exhibit and Sandlin's testimony that this exhibit

demonstrates substantial prejudice, these are insufficient to demonstrate substantial prejudice. As set forth above, a pre-existing health provider's loss of patients and profit, resulting from the Agency's award of a CON for the same geographic area as that health provider, does not amount to substantial prejudice, and to hold otherwise "would eviscerate the substantial prejudice requirement contained in N.C.[G.S.] § 150B-23(a)." *See id.* at 464 (quoting *Parkway Urology*, 205 N.C. App. at 539). As to Sandlin's testimony forecasting Petitioners' loss of ability to subsidize community-based services, this Court provided in *Blue Ridge Healthcare Hospitals Inc.* that a petitioner's hindered ability to provide "other services[,]" due to reduced profits resulting from normal competition, does not suffice to demonstrate substantial prejudice. 255 N.C. App. at 464. Moreover, as conceded by Nudd during his testimony, there is no evidence of any analysis quantifying such an impact on Petitioners' services, meaning Sandlin's testimony as to this harm is "conjectural or hypothetical[,]" and fails to satisfy Petitioners' burden. *See Fletcher I*, 293 N.C. App. at 50 (quoting *Bio-Medical Applications of N.C. Inc*, 282 N.C. App. at 417).

Finally, Petitioners also contend in their brief that Mission effectively operates as a monopoly, which evinces harm beyond normal competition. This Court, however, has recently rejected the bare allegation of monopoly status as grounds for a showing of reversible error by the ALJ, in the opinion issued upon AdventHealth Hendersonville and their co-appellant's appeal from the Agency's approval of Mission's CON application for construction of the Arden FSED, *Fletcher Hosp., Inc.*

*v. N.C. Dep't of Health & Hum. Servs.*, 295 N.C. App. 82 (2024) (hereinafter, "*Fletcher II*"). The *Fletcher II* petitioners argued on appeal that the ALJ erred in not finding the Agency had an obligation to conduct an evaluation of "Mission's monopoly status[,]" and upon review, we affirmed the ALJ's finding. 295 N.C. App. at 97. As reasoning for this decision, we provided that, "while the applicable caselaw does treat particular providers['] monopoly or near-monopoly status as salient, we will not treat 'monopoly' as a 'magic word' without which the ALJ's otherwise sound reasoning becomes reversibly erroneous." *Id.* at 98 (citation omitted). Here, Petitioners again allege that Mission operates as a monopoly; as in *Fletcher II*, we will not treat this allegation, without more, as appropriate grounds for reversal of ALJ Sutton's decision. *See id.* at 98.

Upon our de novo review, we conclude Petitioners have not presented specific evidence of harm beyond that which necessarily results from additional competition, and as such, have failed to properly make a substantial prejudice claim. *See Fletcher I*, 293 N.C. App. at 50; *CaroMont Health, Inc.*, 231 N.C. App. at 4; *Blue Ridge Healthcare Hosps. Inc.*, 255 N.C. App. at 464–65. As the Agency's decision to award a CON is reversible error only if substantially prejudicial to the petitioner's rights, we need not address Petitioners' allegation of Agency error in approving the Mission Application, and Respondents successfully demonstrated there is no genuine issue as to any material fact and they are entitled to a judgment as a matter of law. *See Fletcher I*, 293 N.C. App. at 44; *Bio-Medical Applications of N.C. Inc.*, 282 N.C. App.

at 415. ALJ Sutton therefore properly awarded summary judgment in favor of Respondents, and we affirm ALJ Sutton's decision.

## V. <u>Conclusion</u>

Upon review, we conclude Petitioners have failed to present specific evidence in support of a claim of substantial prejudice, which is necessary for proper reversal of the Agency's decision to award a CON. As such, Respondents successfully demonstrated there is no genuine issue as to any material fact and they are entitled to a judgment as a matter of law, and we affirm ALJ Sutton's decision awarding summary judgment in favor of Respondents.

AFFIRMED.

Judges STROUD and FREEMAN concur.

Report per Rule 30(e).